IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 1:10-cr-046 |
| | : | |
| v. | : | Chief Judge Susan J. Dlott |
| | : | |
| ISHMAEL PICKENS, | : | ORDER DENYING |
| | : | DEFENDANT'S MOTION |
| Defendant. | : | TO SUPPRESS |

This matter comes before the Court on Defendant Ishmael Pickens' Motion to Suppress Evidence (doc. 15). The Court held a hearing on the motion on August 20, 2010. The matter is now ripe for review. For the reasons that follow, the Court **DENIES** Defendant's motion.

**I.     FACTUAL BACKGROUND**

Pickens was arrested at approximately 11:30 p.m. on January 19, 2010 and subsequently charged with one count of being a felon in possession of a weapon in violation of 18 U.S.C. § 922(g)(1). On the night Pickens was arrested, plainclothes Cincinnati Police Officers Hanes and Vanderpool were in an unmarked car conducting undercover surveillance near 1100 Elberon Avenue in Cincinnati Ohio in response to a citizen complaint of drug activity. According to the citizen complaint, between 10:30 p.m. and midnight a white car with a spoiler would turn onto Elberon, and someone in the car would then engage in a hand-to-hand drug transaction.

At approximately 11:00 p.m., Officers Hanes and Vanderpool saw a white car with a spoiler pull onto Elberon. A passenger exited the front seat of the car, walked up a set of stairs

to an unknown location, and then returned to the car.  The driver then pulled the car away from the curb without signaling.

Moving a car away from a curb without first signaling is a violation of Cincinnati Municipal Code ("C.M.C.") § 506-25, which provides that "[n]o person shall start a vehicle which is stopped, standing or parked . . . without giving the proper signal for such movement." Officers Hanes and Vanderpool radioed a description of the white vehicle to fellow officers so that a uniformed officer could make a traffic stop based on the traffic violation they had both observed.

Officers Hanes and Vanderpool followed the white car in their unmarked police vehicle a mile or two until a uniformed officer, P.O. Lawson, pulled the white car over.  After the white car came to a stop at the curb, Officer Lawson approached the car.  Officer Lawson asked the driver for his license and discovered that the driver's license had been suspended.  Meanwhile, Officer Vanderpool, who also stopped at the scene, got out of his car and positioned himself on the passenger side of the white car to provide cover Officer Lawson.  Another officer who had responded to the scene, Officer Maple, also stood at the passenger side of the vehicle providing cover to Officer Lawson.  While standing adjacent to the passenger side of the car, Officer Vanderpool observed what appeared to be the handgrip of a firearm in the right front jacket pocket of the backseat passenger, now identified as the Defendant Ishmael Pickens.

The driver of the car was first ordered out of the car, and shortly thereafter, the passengers were ordered out of the car.  Officers handcuffed Pickens and proceeded with a pat-down search.  The search revealed a loaded firearm in Pickens' front jacket pocket.  Officers also seized marijuana, crack cocaine, and cash from Pickens.  Pickens was read his rights and did not

make a statement. Pickens has a previous conviction for involuntary manslaughter in 2008 and was thus charged with having a weapon under disability.

**II.     ANALYSIS**

Defendant Pickens moves the Court to suppress the evidence obtained on the night in question. The Government responds that Pickens' detention, search, and arrest were valid.

**A.     Initial Stop**

With his Motion to Suppress, Pickens contends that the initial stop of the car was invalid because the officers lacked probable cause to believe a traffic violation had been committed. The Government responds that the Officers had probable cause to believe that the driver of the car was violating a Cincinnati traffic law when they observed the vehicle pull away from the curb without signaling.

Officer Hanes testified that she observed the white car pull away from the curb without signaling. Pickens attacked Officer Hanes' credibility by pointing out that her testimony conflicted with the written Trial Preparation Report she prepared regarding the incident. Officer Hanes wrote in that report that the "[v]ehicle . . . left area without signaling turns. Uniform officer stopped vehicle for traffic violations." (See Def. Ex. 1.) Failure to signal one's turns is a traffic violation under C.M.C. § 506-80 and is distinct from leaving the curb without signaling, which is a violation of C.M.C. § 506-25. Neither statute is mentioned in the Trial Preparation Report, which pertains to Defendant Pickens. However, the traffic ticket issued to the driver of the car lists the offense as "improper leaving curb," and specifies the offense as a violation of C.M.C. § 506.25. (See Def. Ex. 6.) Officer Lawson prepared the traffic ticket based on information he received from Officer Vanderpool while at the scene.

Officer Hanes testified that she observed the white car pull away from the curb without signaling. Officer Vanderpool testified that he observed the car pull away from the curb without signaling. Officer Lawson issued a ticket to the driver citing him for improperly leaving the curb. These facts persuade the Court that the officers witnessed the vehicle pull from the curb without signaling, giving them probable cause to believe that Cincinnati traffic code had been violated. That Officer Hanes' Trial Preparation Report states the vehicle "left area without signaling turns," taken in conjunction with the majority of the evidence, does not disturb the greater weight of the evidence that the violation the officers observed was the car improperly leaving the curb. Once the officers saw the white car pull away from the curb without signaling, they had an objectively justifiable basis for stopping the car.

Furthermore, the Supreme Court has clarified that the "constitutional reasonableness of traffic stops" does not depend "on the actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813 (1996); *see also United States v. Herbin*, 343 F.3d 807 (6th Cir. 2003) (holding that officers had probable cause to effect a traffic stop of motor vehicle in which defendant was a passenger, after officers observed vehicle run a red light and cross the center line of the roadway, regardless of officers' subjective intent to investigate vehicle occupants for drug activity); *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002) ("A police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct."). Even if the officers' subjective intent was to investigate the car's occupants for drug activity based on the citizen complaint, the officers did not run afoul of the Fourth Amendment when they stopped the vehicle so long as they observed a traffic violation take place. Because the Court finds the

testimony of the officers credible, the initial stop did not result in a violation of Pickens' constitutional rights.

### B. Warrantless Search and Seizure

Defendant argues that even if the initial vehicle stop was valid, the officer's decision to prolong the stop and investigate the car's occupants was not supported by reasonable suspicion of an ongoing crime as required by *Terry v. Ohio*, 392 U.S. 1 (1968). The Government responds that because the officers observed the gun in plain view, a *Terry* analysis is inapposite.

The Court agrees that the plain-view exception to the warrant requirement applies to the facts of this case. "A search and seizure is valid if an officer sees an incriminating object while lawfully standing in an area from which the object is plainly visible." *United States v. Riascos-Suarez*, 73 F.3d 616, 625 (6th Cir. 1996) (citing *United States v. Blakeney*, 942 F.2d 1001, 1028 (6th Cir.1991), *cert. denied*, 502 U.S. 1035 (1992)). There is no reasonable dispute that Officer Vanderpool was lawfully present at the scene and that the handgun was incriminating in nature. The question, then, is whether the gun was in fact plainly visible to Officer Vanderpool.

Defendant suggests that Officer Vanderpool could not have observed the gun in Pickens' front jacket pocket. First, Defendant argues, it was dark outside so the gun could not have been visible. However, Officer Vanderpool testified that overhead street lights illuminated the area, including the passenger compartment of the car, and that the silver handgun was visible with the streetlights. Defendant next argues that if Officer Vanderpool had seen a weapon in his pocket, he would have immediately alerted the other officers. Officer Vanderpool explained that he did not alert the other officers immediately upon seeing the handgun to preserve officer safety. Specifically, Officer Vanderpool testified that he did not want Pickens to know that he had

observed the gun because alerting Pickens to that fact might have prompted Pickens to run or to use the weapon. Finally, Defendant argues that the gun would have been deep in the jacket pocket and thus not visible, particularly because of Pickens' short stature and the fact that his right jacket pocket would have been immediately adjacent to, and thus obscured by, the closed car door. The Court finds that the suggestion that it would have been difficult for Officer Vanderpool to see a gun protruding from a jacket pocket is insufficient to discredit that officer's testimony. Officer Vanderpool testified that although he could not recall what Pickens' jacket looked like on the night in question, he did recall the silver color of the firearm and observed the butt of the gun protruding from Pickens' jacket pocket.

Officer Vanderpool's testimony establishes that he was lawfully at the scene, that he observed a gun in Pickens' jacket pocket, and that its incriminating nature was apparent—particularly since Pickens was in a car matching the description of the car in the citizen's complaint concerning drug transactions and Officer Vanderpool himself had just observed another of the car's passengers exit and then return to that same vehicle just as described in the citizen complaint. Therefore, Officer Vanderpool's discovery and seizure of the gun did not violate the Fourth Amendment. *See*, *e.g.*, *United States v. Morton*, 17 F.3d 911, 914 (6th Cir. 1994) (holding that warrantless seizure of defendant's pistol was proper when officer saw gun in plain view in defendant's back pocket and gun, along with information from officers' investigation into reverse drug sting, gave officers' reasonable suspicion to seize gun and detain defendant long enough to ascertain whether defendant possessed gun lawfully and to arrest him after determining that he did not).

After detaining a person, an officer may conduct a "reasonable search for weapons . . . where he has reason to believe that he is dealing with an armed and dangerous individual." *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Officer Vanderpool had reason to believe Pickens was armed because he observed a gun in Pickens' pocket. Officer Vanderpool did not violate Pickens' Fourth Amendment rights when he handcuffed Pickens and conducted a pat-down search, which revealed not only the gun but also crack cocaine, marijuana, and cash.

### C. Arrest

In order to arrest a person, an officer must have "probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Id*.

At the time Officer Vanderpool arrested Pickens, he knew that Pickens was a passenger in a car that was the subject of a citizen complaint concerning drug transactions; he had observed another passenger in that car exit and then return to the car in the location that was the subject of the citizen complaint; he had observed the driver of the car commit a traffic violation; and he had observed a gun in Pickens' front jacket pocket. It was reasonable for Officer Vanderpool to conclude from these facts that an offense had been committed. *See*, *e.g.*, *Riascos-Suarez*, 73 F.3d at 625-26 (holding that officer had probable cause to search and arrest defendant whom he had stopped for speeding and when officer had observed bundles of cash and a weapon inside the vehicle); *United States v. Pearce*, 531 F.3d 374, 382 (6th Cir. 2008) (noting that the officer had probable cause to arrest the defendant and search the vehicle after the officer observed a gun

magazine in plain view on the passenger-side floorboard of the car which the defendant had just exited). Pickens' arrest was therefore valid under the Fourth Amendment.

### III. CONCLUSION

For the reasons stated above, the evidence seized from Pickens' person is admissible. Defendant's Motion to Suppress (doc. 15) is **DENIED**.

IT IS SO ORDERED.

                                                     s/Susan J. Dlott
                                                     Chief Judge Susan J. Dlott
                                                     United States District Court